CRAWFORD v. CRAWFORD.

1. This court has no power to review the findings of fact by a referee, in an action at law, confirmed by the Circuit Judge.
2. While the rule of law is that a creditor is paid his debt when he becomes executor of his debtor's estate and as such receives assets applicable to such debt, yet this rule does not apply when the assets so received are Confederate money, unless the creditor was willing to receive it in payment.
3 But where the executor received Confederate money with an intention of accepting such money in payment of his debt, and then paid out part of it to demands of a lower rank, the estate being solvent, his debt should be credited only with the balance left, at its nominal value.

Before ALDRICH, J., Abbeville, February, 1882.

Action by Cornelia E. Crawford against A. E. Crawford, and S. A. Crawford, executors of James F. Crawford. The opinion

states the referee's report, the order of the Circuit Judge, and the facts of the case. The plaintiff excepted to the order of the Circuit Judge because it overruled the exceptions to the Master's report. Those exceptions alleged error in the findings of law and fact by the Master, quoting the language of the report, and were otherwise as follows :

4. Because it is respectfully submitted said Master erred in not taking into the account the amounts which the executor paid other creditors whose debts were of equal rank with that of the executor.

5. Because it is respectfully submitted said Master erred in holding that Confederate currency, received by the executor, could work a payment by operation of law for the face value of said Confederate currency, Confederate currency not being at any time legal tender, and could not, under such circumstances, work a payment by operation of law for more than the value of said Confederate currency.

6. Because it is respectfully submitted said Master erred in making his calculations, even according to the principles laid down in his report.

Mr. *Eugene B. Gary*, for appellant.

Messrs. *Rice & Smith, W. C. Benet*, contra.

July 31st, 1882, the opinion of the court was delivered by

Mr. CHIEF JUSTICE SIMPSON.—In April, 1861, James F. Crawford, since deceased, executed a sealed note to his brother the defendant, S. A. Crawford, for $1936.64, payable one day after date with interest from the 1st day of January preceeding. James F. Crawford died, or was killed during the war. He left of force a last will and testament in which he appointed his wife, the defendant, Amaryllis, and his brother, the said S. A. Crawford, executor and executrix, both of whom qualified.

The debts of the estate were not very heavy, and the only property which seems to have been sold, was a lot of cotton, which brought $2000, and a few cattle for $350. These sales

were made in 1864, and were paid in Confederate money to S. A. Crawford, aggregating $2350.00. This executor paid debts of the estate, and other expenses, and liabilities of the deceased, during the years 1863, and 1864 to the amount of $1028, a large portion of which were upon simple contract debts. At the close of the war he claimed to have on hand $2000 of his receipts above, in Confederate currency which had become valueless.

Some time in 1880, he transferred the note which is the basis of this action to his wife, who in March, 1881, brought this action against him and the executrix. He made default, but A. E. Crawford, executrix, answered, and resisted the claim of plaintiff upon two grounds. 1st. That S. A. Crawford being the payee of the note, and having been the owner during his executorship, and having had assets of the deceased debtor in his hands sufficient to pay this debt, it was by operation of law extinguished. 2d. At all events, S. A. Crawford should be required to account for the estate of the debtor, so that whatever might be in his hands should be discounted against this sealed note before any judgment should be rendered in this action.

The case although a law case was sent to a referee, who reported his conclusions as follows : 1st. As matter of fact, "that the executor had had assets in his hands sufficient to pay the debt ; 2d. " That the facts show evidence of his intention to receive said assets in payment of his debts." And as matters of law ; 1st. "That the debt in suit was extinguished by operation of law, the executor having had in his hands assets sufficient to pay the same ; 2d, "That upon the note being transferred after it was due, it passed to the plaintiff with all the equities to which it was liable in the hands of the payee." This report was confirmed by the Circuit Judge and the complaint consequently dismissed with costs.

The appeal renews the exceptions to the Referee's report, which were overruled by the Circuit Judge. These exceptions raise several questions of fact, as well as of law ; the questions of fact we cannot consider; the action, although heard by a Referee and the Circuit Judge without a jury, is yet an action

at law. It is an ordinary money demand, by summons and complaint on sealed note, and was strictly triable by a jury. In such case this court has no jurisdiction of the facts; these belong primarily to a jury subject to review by the presiding judge on motion for a new trial, but not within the powers of this court. The fact that the case was submitted to a referee did not change its character; it was still a case at law, the referee being substituted as to the facts in the place of the jury. This substitution, however, had no other effect; it certainly did not convert the case into a case in chancery with appellate privilege to this court. We must then take the facts found by the referee, as fixed and established; we have no power under the constitution to look behind them, and this would be so even if we were satisfied that they had been erroneously established, for the reason, that in cases at law our powers are expressly limited to the correction of errors of law only.

But the questions of law raised in the exceptions are subject to our review, which we will proceed to consider. 1st: Was it error in the Circuit Judge to hold that the debt in suit was extinguished by operation of law, the executor having had assets in his hands sufficient to pay the same.

The rule in such cases is laid down in *Williams on Ex'rs* \*1187, as follows: "If a debtor makes his creditor, or the executor of his creditor, his executor, this alone does not extinguish the debt, though there be the same hand to receive and to pay; yet if the executor has assets of the debtor, it is an extinguishment because then it is within the rule that the person who is to receive the money is the person who ought to pay; the debt, in other words, is not extinct unless upon a supposition that the executor has assets which he may retain to pay himself." This is the rule in this State, as it has been repeatedly held. In *Montaigne* v. *Keith*, 2 *Hill*, \*540, the court said: "There cannot be a doubt about the matter; the moment the defendant was in funds, the debt due himself was paid and extinguished, and would no longer bear interest."

Assuming the fact upon which the error of law is here assigned to be true in its full sense, we could not do otherwise than overrule this exception; but we cannot shut our eyes to

the further fact that the assets which the referee found in the hands of the executor were Confederate money. Such being the fact, in the application of the legal principles involved in this exception, a subsidiary question of law must also be considered, to wit, whether in law Confederate currency can be held to be such assets as would in the hands of a creditor executor, extinguish his debt against the estate by operation of law, as in cases of gold or other legal tender. The referee must have so held and the circuit judge concurred.

There are two well established principles in reference to the payment of debts; 1st. Nothing is a legal tender except gold and silver, or such currency as may constitutionally be made so, and consequently no creditor can be legally required to receive payment, against his will, of a debt in anything else but legal tender currency; 2d. A creditor may receive anything whatever, oak leaves, grains of sand, or anything else in payment, if he is willing to do so, and when so received, in the absence of fraud, or deception, the claim will be satisfied beyond revival. It is needless to cite authorities in support of these propositions.

Now, Confederate currency did not constitute a legal tender, and no creditor of the estate of the deceased could have been forced to receive it in payment of his claim. Nor could the executor, occupying the relation of creditor as well as that of executor to the estate as he did, have been legally required to receive it. He had all the rights of other creditors, and could receive or reject as he saw proper. There was error in law, therefore, in holding that because the executor had Confederate money, nominally sufficient to pay his debt, that it was thereby extinguished, regardless of the fact whether he was willing to receive it or not.

The findings of fact, however, by the referee and concurred in by the circuit judge, went further. He found in substance that J. A. Crawford, executor, had agreed to receive this money. He states in the report, "that the facts show evidence of his intention to receive said assets in payment of his debt." We do not suppose that by this was meant that S. A. Crawford intended to receive these assets in full payment, whether there

was enough to satisfy his claim or not, but that he was to receive it at its nominal value, and apply so much as might not otherwise be used to his note at that value. The report of the referee is not full, and the decree of the circuit judge dismissing the complaint simply confirms the report, and we suppose that in concluding that the executor's debt had been extinguished by the assets received by him, he was not allowed any credit for amounts disposed of in payment to other creditors, especially to debts of lower rank than his own.

A creditor executor, it is true, has the right to retain funds for the payment of his own debt of equal rank with others, and generally it is his duty to apply collections first to sealed demands in preference to unsealed obligations, and if he pays debts of lower rank he will not ordinarily be allowed a credit for such payment; but this rule is not inflexible. It was held in *Hinton* v. *Kennedy*, 3 *S. C.* 459, " that where the administrators of an entirely solvent estate pays simple contract creditors out of their order, reserving ample funds for the payment of specialty debts, equity will relieve him from the legal consequences of the technical devastavit." This seems to be the rule, and it should be applied here. This estate was entirely solvent, but a small portion of the property had been sold to pay debts, (nothing but the cotton and a few cattle,) and we do not think that the executor should be held to have committed a devastavit because he has applied a portion of the proceeds derived from this sale to debts of a lower rank than his own, especially where the creditors were willing to receive the money. He should be credited with the full amount of his payments. Under all the circumstances, the case should be remanded.

The referee having found as matter of fact, that the executor had agreed to receive the Confederate money on his claim before its transfer to the plaintiff, the note of the plaintiff should be credited with the amount received by him, first deducting such sums as he may have paid out for the estate, and for such claims as he may have held against his brother—the credit to be made at the nominal value of the confederate money, and applied at the date of his receipts, with the right

on the part of the plaintiff to proceed with her suit for the re-mainder, if any.

It is the judgment of this court that the judgment of the circuit court be reversed, and the case be remanded for a new trial under the principles herein above.